**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RFE INDUSTRIES, INCORPORATED,
Plaintiff-Appellant,

v.                                                                    No. 95-2665

SPM CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Jackson L. Kiser, Chief District Judge.
(CA-94-20-L)

Argued: October 31, 1996

Decided: January 29, 1997

Before WIDENER and HALL, Circuit Judges, and
THORNBURG, United States District Judge for the
Western District of North Carolina, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded with instructions by
published opinion. Judge Hall wrote the opinion, in which Judge Wid-
ener and Judge Thornburg joined.

_____

**COUNSEL**

**ARGUED:** David Marc Freeman, NAGEL, RICE & DREIFUSS,
Livingston, New Jersey, for Appellant. Michael Francis Urbanski,
WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia,
for Appellee. **ON BRIEF:** Bruce H. Nagel, NAGEL, RICE & DREI-

FUSS, Livingston, New Jersey; GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellant. Dudley F. Woody, Frank K. Friedman, Paul C. Kuhnel, WOODS, ROGERS & HAZLE-GROVE, P.L.C., Roanoke, Virginia, for Appellee.

_____

## OPINION

HALL, Circuit Judge:

RFE Industries, Inc., a New Jersey corporation, filed this action against SPM Corporation of Montvale, Virginia, in the district court for the District of New Jersey, alleging that SPM had violated federal and state law by infringing on RFE's "Popcorn" trademark, used by RFE to denote certain of the silver anodes that it manufactures and distributes for use in electroplating. SPM successfully maintained that it was not subject to personal jurisdiction in New Jersey, and the case was transferred to the Western District of Virginia on February 25, 1994. RFE's motion for retransfer was denied by the district court below, and that court subsequently entered a final order granting SPM's motion for summary judgment on all claims. RFE timely filed a notice of appeal.

We conclude that the district court did not abuse its discretion by denying the motion for retransfer, and we affirm its grant of summary judgment to SPM on RFE's state-law claim for tortious interference with contractual relations. We vacate the court's judgment and remand the case with respect to the remaining claims, however, because its finding that RFE's trademark is merely descriptive is clearly erroneous.

I.

Both RFE and SPM supply anodes to the electroplating industry. These anodes are small pieces of metal that, when placed in a plastic or titanium basket, subjected to an electric current, and submerged into a potassium cyanide "bath," ionize, dissolve, and accumulate on the surface to be plated.

2

RFE developed a process in early 1989 to make silver anodes in shapes that vaguely resemble cereal flakes or, perhaps, popped corn. Later that year, RFE began to market its new product, which it called "Popcorn." In June 1990, RFE applied to register the mark with the United States Patent and Trademark Office (PTO).

During September 1991, SPM began selling the identical product under the same name; it mailed solicitation letters, containing samples of its product, to prospective purchasers. A few of those letters reached some of RFE's customers, one of which forwarded a copy to RFE in March 1992. RFE filed suit soon thereafter, asserting claims for trademark infringement and for unfair competition under the Lanham Act, 15 U.S.C. § 1051 et seq. The complaint also alleged state-law claims for infringement and for tortious interference with contractual relations.

Upon learning of the suit, SPM changed the name of its product from "Popcorn" to "Snowflake." On November 9, 1993, the PTO issued a certificate of registration to RFE for its "Popcorn" trademark, without requiring RFE to submit any proof that the mark had acquired a secondary meaning. See Section III-A, infra.

The PTO's certification failed to convince the district court, which found the "Popcorn" mark, as it pertains to silver anodes, undeserving of protection from infringement. The court's finding necessitated the entry of summary judgment for SPM on three of RFE's four claims; the fourth claim, that for tortious interference with contractual relations, was also held by the district court to be without merit. RFE appeals.

II.

At the threshold, we must determine whether the district court abused its discretion by denying RFE's motion to retransfer the case to the District of New Jersey. See Linnell v. Sloan, 636 F.2d 65, 67 (4th Cir. 1980) (stating applicable standard of review).

RFE contends that the case was ripe for retransfer when, during the latter stages of discovery, it finally came to light that SPM had failed

3

to timely disclose its business relationship, beginning in 1990, with Englehard Corporation, a New Jersey wholesaler of silver salts. It was also revealed that SPM had purchased silver from another New Jersey company in November 1992, and that it had sold silver cyanide to a New Jersey customer about a year prior to the February 1994 transfer order.

The district court below observed that, had the district court in New Jersey known of SPM's then-existing contacts with the putative forum state, it nonetheless need not have determined that those contacts were so substantial as to require it to assert personal jurisdiction over SPM. We agree that, even had the New Jersey court been fully apprised of the nature and quality of SPM's contacts, it could have nevertheless exercised its sound discretion to grant the transfer motion.

We note also that RFE failed to demonstrate below that, as of the date it moved for retransfer, it had been or would be prejudiced by being compelled to litigate in Virginia. Moreover, there has been no showing that SPM perpetrated a fraud on the court by intentionally concealing its contacts with New Jersey. In light of the above considerations, we hold that the district court below did not abuse its discretion by denying the motion for retransfer.

III.

A.

We turn now to the merits of RFE's contention that the designation "Popcorn," pertaining to its line of oddly shaped silver anodes, is a mark worthy of legal safeguarding. We have noted previously that the protection accorded such marks is a function of the mark's distinctiveness. Sara Lee Corp. v. Kayser-Roth Corp. , 81 F.3d 455, 464 (4th Cir.), cert. denied, 117 S. Ct. 412 (1996)."Fanciful," "arbitrary," or "suggestive" marks are distinctive; marks that are merely "descriptive" or "generic" are not, unless, in the case of the former, the primary significance of the product feature described by the mark is to identify the source of the product, rather than the product itself. Id. Such descriptive marks -- Coca-Cola(R), for example -- are said to have acquired "secondary meaning" in the minds of the public. Id.

4

The controversy here, typical of trademark disputes, centers on whether RFE's "Popcorn" mark is suggestive (and therefore distinctive) or merely descriptive. The district court found that the "Popcorn" designation, as applied to silver anodes, "describes a characteristic of the product -- its shape or appearance -- rather than suggest[s] it." The court found further that "Popcorn" had not acquired a secondary meaning in the silver anode market, identifying RFE as its single source. The district court's findings may be disturbed on appeal only if they are clearly erroneous. Sara Lee at 460; Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1526 (4th Cir. 1984).

We agree with the district court that the proper focus in this case is on the product's shape. Any similarity between"Popcorn" anodes and actual popped corn begins and ends with shape; the designation is in no way intended to indicate that RFE's anodes have the color, weight, or texture of popcorn. The question to be answered, then, is the one posed by the district court: Does the term"Popcorn" suggest the anodes' shape, or merely describe it?

We begin by acknowledging that basic, "common" shapes are not generally accorded trademark protection. Wiley v. American Greetings Corp., 762 F.2d 139, 141-42 (1st Cir. 1985) ("It is hornbook law that `ordinary geometric shapes such as circles, ovals, squares, etc., . . . are regarded as non-distinctive and protectable only upon proof of secondary meaning.'"), quoting J. Thomas McCarthy, Trademarks and Unfair Competition, § 7:12, at 172; Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp., 716 F.2d 854, 858 (11th Cir. 1983) (quoting McCarthy).

Our acknowledgment does not, however, end our inquiry. The word "popcorn" is not generally used to denote a shape, much less a common or ordinary one like a circle or square; we doubt, for example, that geometry students are routinely asked to bisect a "popcorn." Moreover, popcorn does not admit of a paradigmatic shape. Like snowflakes (both real and SPM's anode version), it might be said that no two of the popped kernels are exactly alike.

Even were the shape at issue one that is both common and constant, an important distinction must be made when the product only resembles, and does not replicate, the shape. No one would mistake

5

RFE's anodes for popcorn, even if they were the same color and texture, drenched in butter, and salted.

The anodes are not themselves popcorn. They are not made of popcorn, and they are not used in the manufacture of popcorn. In the context of silver anodes, then, the name "Popcorn" is neither a generic term nor an actual description of any "function, use, characteristic, size, or intended purpose of the product." See Sara Lee, 81 F.3d at 464. RFE's "Popcorn" mark is instead a metaphor; it cleverly conjures or suggests an image that its product vaguely resembles. The name therefore "reinforces the association between the product and its source -- a sure sign of a mark entitled to protection." Id. at 465.

Lastly, we note that we find ourselves confronted yet again with a case where a trademark has been ruled descriptive, notwithstanding that the PTO has issued a certificate of registration for the mark without requiring proof of secondary meaning. We have said at least twice before that the PTO's taking of such an action is powerful evidence that the registered mark is suggestive and not merely descriptive. See Sara Lee at 465 n.12; Pizzeria Uno at 1529 ("this essential fact . . . must be considered prima facie correct by a court in considering the validity of a trademark[.]") (citations omitted).

It must by now be apparent that a district court should not freely substitute its opinion for the PTO's. See Sara Lee at 465 n.12 ("The inescapable conclusion is that either the Patent and Trademark Office or the district court has made a mistake; we are convinced that it was the latter."). We conclude that the PTO has again correctly determined the mark at issue to be suggestive, and that the district court's finding to the contrary is clearly erroneous.

B.

Our holding today does not, in light of the record before us, mandate the entry of judgment for RFE on the three claims to which the strength or distinctiveness of its mark is relevant. The district court, in ruling that SPM was entitled to summary judgment based solely upon the perceived weakness of RFE's mark, did not consider factors other than distinctiveness that may be pertinent to resolving the question of whether SPM's use of the "Popcorn" trademark was likely to

6

have resulted in anode purchasers confusing its product with RFE's. See Sara Lee at 463-64 (cataloging a non-exclusive list of potential factors). A likelihood of confusion must be established in order for a plaintiff to prevail on claims of trademark infringement and unfair competition under the Lanham Act. Id. at 463. The same is true of common-law infringement claims. See, e.g., Rosso & Mastracco, Inc. v. Giant Food Shopping Center of Va., 104 S.E.2d 776, 781 (Va. 1958).

For the purposes of remand, then, we instruct the district court only that it must consider the distinctiveness of RFE's "Popcorn" trademark to be conclusively established. Whether RFE may ultimately prevail on its claims, along with the nature and extent of any relief to which it may be entitled, are among those issues left for the district court to determine.

IV.

We turn finally to the district court's grant of summary judgment to SPM on RFE's state-law claim for tortious interference with contractual relations. The essence of this claim is that SPM made unsolicited mailings and telephone calls to some of RFE's customers, offering to sell them "Popcorn" at a lower price than RFE was asking. The tort has four elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985).

In this case, the affected customers had, in the past, simply ordered their anodes from RFE on an "as needed" basis; they had not committed to any future purchases of "Popcorn" at all. RFE thus had only the weakest kind of business expectancy. All that it could expect is that it would retain its customers only so long as it met their demand for a quality product at a competitive price.

7

Moreover, RFE's witnesses conceded that its former customers began purchasing "Popcorn" anodes from SPM solely because the latter offered a lower price for precisely the same product. Thus, it has been established that SPM's mailings and letters were not a proximate cause of any business loss suffered by RFE. We conclude that RFE has failed to adduce evidence of the first and third <u>Chaves</u> elements sufficient to withstand the entry of summary judgment against it.

V.

The summary judgment entered on behalf of SPM by the district court is affirmed as to RFE's claim under state law for tortious interference with contractual relations. The court's judgment is vacated, however, on the claims for trademark infringement and for unfair competition under the Lanham Act, and on the state-law infringement claim. The case is remanded for further proceedings, with instructions for the district court to treat the distinctiveness of RFE's "Popcorn" trademark as conclusively established.

<u>AFFIRMED IN PART, VACATED IN PART,</u>
<u>AND REMANDED WITH INSTRUCTIONS</u>

8