NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

06-1197
(Opposition No. 91/117,894)

LEO STOLLER,

Appellant,

v.

SUTECH U.S.A., INC.,

Appellee.

_____

DECIDED:  October 5, 2006

_____

Before BRYSON, PROST, <u>Circuit Judges</u>, and SARIS, <u>District Judge</u>.[*]

PER CURIAM.

Appellant Leo Stoller appeals from a decision of the Trademark Trial and Appeal Board dismissing his opposition to an application by appellee Sutech U.S.A., Inc., to register the mark "stealth" for "machinery, namely, lawn mowers."  On appeal, Mr. Stoller contends that Sutech should not be entitled to register the "stealth" mark.  We <u>affirm in part, vacate in part, and remand</u>.

---

[*]    Honorable Patti B. Saris, District Judge, United States District Court for the District of Massachusetts, sitting by designation.

1. Mr. Stoller makes several arguments premised on his assertion that Sutech's Chinese parent corporation, and not Sutech itself, is the true owner of the "stealth" mark for lawnmowers. He contends that the application is therefore void because the wrong party was identified as the applicant, see 37 C.F.R. § 1201.02(b); because Sutech failed to disclose that its application for the mark was based on its parent's use of the mark, see id. § 1201.03(a)(i); because Sutech failed to disclose that it was a subsidiary of a Chinese corporation, see id. § 1201.03(c); and because Sutech is merely an importer and distributor of products bearing the "stealth" mark, see id. § 1201.06(a). We disagree. As between a parent and its subsidiary, ownership of a mark is "largely a matter to be decided between the parties themselves." 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 16:37 (4th ed. 2006); see also 37 C.F.R. § 1201.03(c) ("The filing of an application either by the parent or by the subsidiary should be considered by the examining attorney to be the expression of the intention of the parties as to ownership in accord with the arrangements between them."). Moreover, based on the evidence of record the Board found that Sutech "purchases the parts for, and manufactures and sells to distributors, the goods identified by the mark." The Board found that Sutech maintains the requisite control of the nature and quality of the goods identified by the mark, and therefore that Sutech was the proper party to register the mark. We see no ground for questioning that conclusion, and we therefore reject Mr. Stoller's arguments regarding Sutech's ownership of the mark.

2. Next, Mr. Stoller argues that Sutech's application should be denied because its mark is merely descriptive of its lawnmowers. In support of that argument, Mr.

Stoller points to deposition testimony from Sutech's vice president, Mr. Yuning Zhang, suggesting that Sutech believed the front of its lawnmowers resembled the military's Stealth bomber aircraft.

The Board concluded that Sutech's mark is not merely descriptive of its lawnmowers, and we agree. Mr. Stoller does not suggest that Sutech's mark is intended to evoke the common, dictionary meaning of the word stealth (i.e., "the act or action of going or passing furtively, secretly, or imperceptibly," Webster's Third New International Dictionary 2232 (1968)). Rather, Mr. Stoller argues that the mark describes the shape of the lawnmower by evoking the image of the Stealth bomber. The connection between the Stealth bomber and the shape of Sutech's lawnmower, however, is an associative connotation at most, and it requires some degree of imagination to make that association. Under such circumstances, the Board correctly ruled that the mark is not merely descriptive. See, e.g., RFE Indus., Inc. v. SPM Corp., 105 F.3d 923, 925-26 (4th Cir. 1997) (although the word "Popcorn" as used in a mark for anodes suggests the shape of the product, that does not render the mark merely descriptive—"'Popcorn' mark is instead a metaphor; it cleverly conjures or suggests an image that its product vaguely resembles"); In re Colonial Stores, Inc., 394 F.2d 549, 553 (CCPA 1968) ("Sugar & Spice" is not merely descriptive, because it has "reminiscent, suggestive or associative connotation").

3. Mr. Stoller makes several arguments premised on Sutech's use of the "stealth" mark prior to its application. In particular, he contends that prior to its application for the mark, Sutech had used the mark "Sutech Stealth" but never the mark "stealth" by itself. Thus, in Mr. Stoller's view, Sutech's application should have been for

a mark that was a combination of the two words rather than for a mark that consisted of the word "stealth" alone. Mr. Stoller also argues that Sutech failed to prove, as it contends, that it first used the "stealth" mark on July 1, 1998. Based on that argument, Mr. Stoller contends that Sutech's application was defective and that Sutech is therefore not entitled to the registration for which it has applied. In addition, Mr. Stoller makes the related argument that Sutech committed fraud on the Patent and Trademark Office ("PTO") by making misrepresentations regarding its prior use of the mark.

The problem with each of those arguments is that Sutech's application was based on an intent to use the "stealth" mark. See 15 U.S.C. § 1051(b) (discussing "intent-to-use" applications). An intent-to-use application does not rely on or require any prior use of the mark, and Sutech was not required to prove any priority date based on its first use of the mark.[1] Nor is there any law prohibiting a party from filing an intent-to-use application for a mark that the party has actually used in the past. See Corporate Document Servs. Inc. v. I.C.E.D. Mgmt. Inc., 48 USPQ2d 1477, 1479 (TTAB 1998) (to establish priority of use, intent-to-use applicant is entitled to rely on actual use prior to

---

[1]    Pursuant to a discovery request, Sutech provided Mr. Stoller with a copy of a document that, on its face, appears to be a statement of use indicating that Sutech first used the mark in July 1998. Attached to that document was a specimen of use that Mr. Stoller argues does not properly correspond to the mark described in Sutech's application. However, the Board found that the document was not submitted to the PTO. Rather, the Board noted that the document "appears to be a copy of a document from applicant's or its attorney's files," and found that the document "is not of record in this application file at the USPTO." Because Sutech filed an intent-to-use application, there is no reason that its application would have needed to include a statement of use or a specimen of use. See generally Eastman Kodak Co. v. Bell & Howell Document Mgmt. Prods. Co., 994 F.2d 1569 (Fed. Cir. 1993) (discussing the relationship between intent-to-use applications and statements of use). Mr. Stoller does not dispute the Board's characterization of the document as not having been filed with Sutech's application.

the constructive use date of its intent-to-use application); <u>Dyneer Corp. v. Auto. Prods.</u> <u>plc</u>, 37 USPQ2d 1251, 1256 (TTAB 1995) (intent-to-use applicant permitted to tack use analogous to trademark use onto its constructive use date so long as applicant had continuing intent to cultivate association of mark with itself and its goods up to the filing date). Because Sutech based its application on its intent to use the mark in the future, Mr. Stoller's arguments have no bearing on Sutech's application. Thus, Mr. Stoller's arguments regarding Sutech's prior use of the Stealth mark are not grounds for denying Sutech's registration of the mark or finding that Sutech committed fraud on the PTO.

4. Next, Mr. Stoller appears to argue that the "stealth" mark is unregistrable because it is functional. That argument misconstrues the relevant law. While an applicant may not obtain trademark protection for structural features of a product or its packaging if those features are purely functional, that principle has no bearing on an application to register a word mark. In his brief, Mr. Stoller argues that Sutech would have been precluded from registering the unique design of its lawnmowers "had they chose to register the 'design' of their product." Whatever force there may be to that contention, it has no application to the word mark that is the subject of this opposition.

5. Mr. Stoller's primary argument for why Sutech is not entitled to register the "stealth" mark for lawnmowers is that the mark so resembles certain of Mr. Stoller's trademarks as to create a likelihood of confusion. The Board found that Mr. Stoller "established in this record neither use of the pleaded marks nor ownership of any validly subsisting federal registrations," and so concluded that Mr. Stoller failed to show the requisite standing or priority of use on which to base his likelihood of confusion claim.

In his notice of opposition, Mr. Stoller alleged that he owns 26 federally registered trademarks that incorporate the word "stealth." Mr. Stoller particularly focused on his alleged "stealth" mark for lawn sprinklers. A party pursuing an opposition on the ground of likelihood of confusion "must prove that it has proprietary rights in the term it relies upon to prove likelihood of confusion." McCarthy on Trademarks § 20:15. Typically, that proof consists of evidence of ownership of a federally registered mark or prior use of an unregistered mark. Although Mr. Stoller attached copies of what appear to be original certificates of registration for the marks that he referred to in his notice of opposition, those copies do not indicate the current status or title of the registrations, as required by 37 C.F.R. § 2.122(d). And although Mr. Stoller submitted some evidence of his actual prior use of the "stealth" mark, the Board correctly found that evidence to be insufficient to establish Mr. Stoller's prior use of the mark in commerce. That evidence is therefore insufficient to establish Mr. Stoller's use of the "stealth" mark or his current ownership of registered marks using that term.

On appeal, Mr. Stoller argues that Sutech stipulated to his current ownership of the federally registered marks that he referred to in his notice of opposition. Mr. Stoller points to his notice of reliance that was entered into the record before the Board. In that notice of reliance, Sutech "stipulated" to the entry of various documents into the record, including "The true and correct copy of the list of attached STEALTH Federal Trademark Registrations which are owned by Leo Stoller and herein relied upon in support of the Opposer's Notice of Opposition." The list attached to that notice of reliance shows several trademarks that incorporate the word "stealth," including registration number 2,024,889 for the mark "The Stealth" for use on lawn sprinklers.

Thus, on its face the notice of reliance appears to indicate that Sutech conceded that Mr. Stoller owns the marks listed in the attachment to the notice of reliance. The Board's own procedures and this court's precedent recognize that parties may stipulate to trademark ownership and registrations. See TTAB Manual of Procedure § 704.03(b)(1) ("[A] registration owned by any party to the proceeding may be made of record in the proceeding by stipulation of the parties."); see also Tiffany & Co. v. Columbia Indus., Inc., 455 F.2d 582, 585 (CCPA 1972) (opposer's trademark ownership sufficiently established to proceed with likelihood of confusion claim where applicant "did not deny appellant's ownership of the registration, but rather admitted 'the registrations referred to in the notice of opposition'").

Because the Board's opinion does not mention the notice of reliance or the stipulation contained in it, we cannot determine whether the Board overlooked that evidence or concluded for some reason that it does not satisfy the requirement that Mr. Stoller prove current ownership of the federally registered marks on which he bases his claim of likelihood of confusion. Although we are not prepared to conclude without more that the notice of reliance was necessarily sufficient to establish Mr. Stoller's ownership and the current status of the registered marks that Mr. Stoller references in his notice of opposition, neither can we affirm the Board's dismissal of Mr. Stoller's likelihood of confusion claim in the absence of some indication of the Board's views on that issue. We therefore remand for the Board to consider whether Sutech stipulated to Mr. Stoller's rights in the "stealth" marks referred to in his notice of opposition and whether the stipulation was sufficient to satisfy his burden to prove his current ownership of registered "stealth" marks. If the Board finds that, in light of the evidence of record, the

stipulation is sufficient to satisfy Mr. Stoller's burden of proof on standing, the Board

should address the merits of Mr. Stoller's likelihood of confusion claim.[2]

Each party shall bear its own costs for this appeal.

---

[2]     Sutech devotes a considerable portion of its brief to arguing the merits of the likelihood of confusion issue, presumably as a possible alternative ground for affirming the Board's disposition. Because we are reviewing an order of an administrative agency, not a trial court, we are not free to uphold the agency's decision on a ground different from the one the agency adopted. See Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."); Mayfield v. Nicholson, 444 F.3d 1238, 1334 (Fed. Cir. 2006), citing Bivings v. U.S. Dep't of Agric., 225 F.3d 1331, 1335 (Fed. Cir. 2000) (A court "cannot affirm the agency on a theory that, although supported by the record, was not the basis for the agency's ruling."). We therefore decline to address the merits of the likelihood of confusion issue.